UNITED STATES DISTRICT COURT

FOR THE

DISTRICT OF MASSACHUSETTS

05 c 10652 GAO

*FILED*
Clerk's Office
USDC, Mass
Date 4-4-05
By TOW
Deputy Clerk

ELAINE L. CHAO, Secretary of Labor,
United States Department of Labor,

        Plaintiff,

        v.

REVOLI CONSTRUCTION CO., INC.,

        Defendant.

MAGISTRATE JUDGE MBB

CIVIL ACTION FILE NO:

RECEIPT # _____
AMOUNT $250
SUMMONS ISSUED Yes
LOCAL RULE 4.1 _____
WAIVER FORM _____
MCF ISSUED _____
BY DPTY. CLK. Tow
DATE 4-4-05

## COMPLAINT

    This is an action for the recovery of penalties incurred under an Act of the United States

more particularly penalties incurred under the Occupational Safety and Health Act of 1970,

(29 U.S.C. § 651 *et seq.*), hereinafter referred to as the Act.

I.

    Jurisdiction of this action is conferred upon this Court by 29 U.S.C. § 666(l),

28 U.S.C. § 1345, and the Federal Debt Collection Procedures Act, 28 U.S.C. § 3001 *et seq.*

II.

    Defendant Revoli Construction Co., Inc., is and at all times hereinafter was a corporation

engaged in the excavation and piping work business, with its principal office located at 352 Park

Street, Suite 201W, North Reading, MA 01864 within the jurisdiction of this Court.

III.

As a result of an Occupational Safety and Health Administration (OSHA) inspection
(#113544654) of a worksite of Defendant located opposite 271 Main Street, Wilmington, MA
01887, conducted by an authorized representative of the Secretary of Labor, United States
Department of Labor (hereinafter called the Secretary), on November 17, 1999, a four (4) item
Serious Citation and a one (1) item Willful Citation were issued to Defendant on January 19,
2000 by the OSHA Methuen, MA Area Office, under 29 U.S.C. § 658(a) for alleged violations
of the requirements of the Act and the pertinent regulations thereunder, together with a
Notification of Penalty proposed, as provided under 29 U.S.C. § 659(a), proposing penalties of
$81,000.00 for the aforesaid alleged violations.  A copy of the Citations is attached hereto as
Exhibit A.  Defendant filed a Notice of Contest with the Occupational Safety and Health Review
Commission (the OSHRC) on January 26, 2000.  The Secretary filed her Complaint with the
OSHRC on February 14, 2000.

IV.

On March 16, 2001, OSHRC Judge Michael H. Schoenfeld issued a Decision and Order
affirming all items of the Citations and assessing a $500.00 penalty for each item in Serious
Citation 1, and a $63,000.00 penalty for Willful Citation 2 for a total penalty of $65,000.00.  The
Defendant filed a Petition for Discretionary Review with the OSHRC.  On December 7, 2001,
the OSHRC issued a Decision affirming Judge Schoenfeld's Decision and Order.  A copy of the
Decision is attached hereto as Exhibit B.  No further appeal was taken and the Commission's
Decision is a final Order.

V.

In letters dated July 9, 2004 and September 13, 2004, the Methuen OSHA Area Office notified the Defendant of the payment due for the assessed penalties ($65,000.00 plus administrative costs, interest and delinquency penalty). Copies of these letters are attached hereto as Exhibit C. As of this date, the Defendant has failed to make any payment to the Secretary.

VI.

As a result of the facts hereinabove alleged and in accordance with the provisions of the Act, there is due and owing from Defendant the sum of Sixty-five thousand dollars ($65,000.00), with interest (pre-judgment interest calculated pursuant to 29 C.F.R. §§20.57-20.58, post-judgment interest to be calculated pursuant to 28 U.S.C. §1961) delinquent penalty (calculated pursuant to 29 C.F.R. §20.55), administrative costs (calculated pursuant to 29 C.F.R. §20.59), for costs of this action and a judgment to recover said sum is expressly authorized by section 17(1) of the Act.

WHEREFORE, Plaintiff demands judgment against Defendants for $65,000.00 plus interest and costs and for such other further relief as the Court may deem just and proper.

Howard M. Radzely
Solicitor of Labor

Frank V. McDermott, Jr.
Regional Solicitor

Kevin E. Sullivan
Attorney

Post Office Address:
U.S. Department of Labor
Office of the Solicitor
JFK Federal Building
Room E-375
Boston, MA 02203
TEL: (617)565-2500
FAX: (617)565-2142

U.S. Department of Labor
Attorneys for Complainant

DATE _March 22, 2005_

3

JS-44 (Rev. 3/99)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974 is req the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

ELAINE L. CHAO, Secretary of Labor,
United States Department of Labor

(b) County of Residence of First Listed Plaintiff _____
(EXCEPT IN U.S. PLAINTIFF CASES)

(C) Attorney's (Firm Name, Address, and Telephone Number)

Kevin E. Sullivan, Esquire    (617) 565-2500
U.S. Department of Labor, Office of the Solicitor
JFK Federal Building, Room E-375, Boston, MA 02203

### DEFENDANTS

REVOLI CONSTRUCTION CO., INC.

County of Residence of First Listed Defendant _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
TRACT OF LAND INVOLVED.

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☒ 1  U.S. Government Plaintiff

☐ 2  U.S. Government Defendant

☐ 3  Federal Question
(U.S. Government Not a Party)

☐ 4  Diversity
(Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN "X" IN ONE BOX FOR PLAINTIFF
(For Diversity Cases Only)                                AND ONE BOX FOR DEFENDANT)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury — | ☐ 620 Other Food & Drug | | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | ☐ 423 Withdrawal | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury — | of Property 21 USC 881 | 28 USC 157 | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | **PROPERTY RIGHTS** | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 820 Copyrights | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☒ 660 Occupational | ☐ 830 Patent | ☐ 810 Selective Service |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | ☐ 840 Trademark | ☐ 850 Securities/Commodities/ |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | Exchange |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | | **SOCIAL SECURITY** | ☐ 875 Customer Challenge |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | **LABOR** | ☐ 861 HIA (1395ff) | 12 USC 3410 |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | ☐ 710 Fair Labor Standards | ☐ 862 Black Lung (923) | ☐ 891 Agricultural Acts |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury | Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters |
| | | | | ☐ 865 RSI (405(g)) | ☐ 894 Energy Allocation Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 730 Labor/Mgmt. Reporting | | ☐ 895 Freedom of |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | & Disclosure Act | **FEDERAL TAX SUITS** | Information Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 740 Railway Labor Act | ☐ 870 Taxes (U.S. Plaintiff | ☐ 900 Appeal of Fee Determination |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | Habeas Corpus: | | or Defendant) | Under Equal Access to |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | ☐ 790 Other Labor Litigation | ☐ 871 IRS—Third Party | Justice |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | ☐ 791 Empl. Ret. Inc. | 26 USC 7609 | ☐ 950 Constitutionality of |
| ☐ 290 All Other Real Property | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | Security Act | | State Statutes |
| | | ☐ 550 Civil Rights | | | ☐ 890 Other Statutory Actions |
| | | ☐ 555 Prison Condition | | | |

## V. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION (Cite the U.S. Civil Statute under which you are filing and write brief statement of cause.
Do not cite jurisdictional statutes unless diversity.)

This is an action for recovery of penalties incurred under the Occupational Safety and Health Act of 1970,
(84 Stat. §1590; 29 USC §651 et seq.)

## VII. REQUESTED IN COMPLAINT:

CHECK IF THIS IS A CLASS ACTION
☐ UNDER F.R.C.P. 23

DEMAND $
65,000 plus int. & costs

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☐ Yes   ☐ No

## VIII. RELATED CASE(S) (See instructions):
IF ANY

JUDGE _____          DOCKET NUMBER _____

DATE  March 22, 2005

SIGNATURE OF ATTORNEY OF RECORD  Kevin E. Sullivan

### FOR OFFICE USE ONLY

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

1. Title of case (name of first party on each side only) _Elaine L. Chao v. Revoli Construction Co., Inc._

2. Category in which the case belongs based upon the numbered nature of suit code listed on the civil cover sheet.  (See local rule 40.1(a)(1)).

        ___    I.    160, 410, 470, R.23, REGARDLESS OF NATURE OF SUIT.

        ___    II.    195, 368, 400, 440, 441-444, 540, 550, 555, 625, 710, 720, 730,    *Also complete AO 120 or AO 121
                        740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.    for patent, trademark or copyright cases

        ___    III.    110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310,
                        315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371,
                        380, 385, 450, 891.

        ✓    IV.    220, 422, 423, 430, 460, 510, 530, 610, 620, 630, 640, 650, 660,
                        690, 810, 861-865, 870, 871, 875, 900.

        ___    V.    150, 152, 153.

3. Title and number, if any, of related cases.  (See local rule 40.1(g)).  If more than one prior related case has been filed in this district please indicate the title and number of the first filed case in this court.

_____

4. Has a prior action between the same parties and based on the same claim ever been filed in this court?

                                                                    YES ☐    NO ✓

5. Does the complaint in this case question the constitutionality of an act of congress affecting the public interest?  (See 28 USC §2403)

                                                                    YES ☐    NO ✓

    If so, is the U.S.A. or an officer, agent or employee of the U.S. a party?

                                                                    YES ☐    NO ☐

6. Is this case required to be heard and determined by a district court of three judges pursuant to title 28 USC §2284?

                                                                    YES ☐    NO ✓

7. Do **all** of the parties in this action, excluding governmental agencies of the united states and the Commonwealth of Massachusetts ("governmental agencies"), residing in Massachusetts reside in the same division? - (See Local Rule 40.1(d)).

                                                                    YES ✓    NO ☐

        A.    If yes, in which division do **all** of the non-governmental parties reside?

                Eastern Division ✓        Central Division ☐        Western Division ☐

        B.    If no, in which division do the majority of the plaintiffs or the only parties, excluding governmental agencies, residing in Massachusetts reside?

                Eastern Division ☐        Central Division ☐        Western Division ☐

8. If filing a Notice of Removal - are there any motions pending in the state court requiring the attention of this Court? (If yes, submit a separate sheet identifying the motions)

                                                                    YES ☐    NO ✓

(PLEASE TYPE OR PRINT)

ATTORNEY'S NAME _Kevin E. Sullivan_

ADDRESS _U.S. Dept. of Labor, Office of the Solicitor, JFK Federal Bldg., Room E-375, Boston, MA  02203_

TELEPHONE NO. _(617) 565-2500_

(Coversheetlocal.wpd - 10/17/02)

FILED
Clerk's Office
USDC, Mass.
Date_____
By_____
Deputy Clerk

05-10652



EXHIBIT A



**U.S. Department of Labor**
Occupational Safety and Health Administration

Inspection Number: 113544654
Inspection Dates: 11/17/1999 - 11/17/1999
Issuance Date:      01/19/2000

## Citation and Notification of Penalty

**Company Name:**   Revoli Construction Co., Inc.
**Inspection Site:**  Opposite 271 Main Street, Wilmington, MA  01887

---

## Citation 1 Item 1   Type of Violation:   **Serious**

29 CFR 1926.100(a): Employees were not protected by protective helmets while working in areas where there was a possible danger of head injury from impact, or from falling or flying objects, or from electrical shock and burns:

    (a) Location - Opposite 271 Main St., Wilmington, MA:

    On or about 11/17/99, an employee was exposed to serious injuries while working within a 7 foot deep trench without a hard hat.

| Date By Which Violation Must be Abated: | Corrected During Inspection |
|---|---|
| Proposed Penalty: | $   4500.00 |

## Citation 1 Item 2   Type of Violation:   **Serious**

29 CFR 1926.651(c)(2):  A stairway, ladder, ramp or other safe means + of egress was not located in trench excavations that were 4 feet (1.22m) or more in depth so as to require no more than 25 feet (7.62m) of lateral travel for employees:

    (a) Location - Opposite 271 Main St., Wilmington, MA:

    On or about 11/17/99, an employee was exposed to serious injuries while working within this 7 foot deep excavation without a safe means of egress.

| Date By Which Violation Must be Abated: | Corrected During Inspection |
|---|---|
| Proposed Penalty: | $   4500.00 |

---

See pages 1 through 4 of this Citation and Notification of Penalty for information on employer and employee rights and responsibilities.

Citation and Notification of Penalty                **Page 5 of 7**                OSHA-2 (Rev. 9/93)


**U.S. Department of Labor**
Occupational Safety and Health Administration

Inspection Number: 113544654
Inspection Dates: 11/17/1999 - 11/17/1999
Issuance Date: 01/19/2000



## Citation and Notification of Penalty

Company Name:    Revoli Construction Co., Inc.
Inspection Site:    Opposite 271 Main Street, Wilmington, MA  01887

---

## Citation 1 Item 3   Type of Violation:   **Serious**

29 CFR 1926.651(j)(2): Employees were not protected from excavated or other materials or equipment that could pose a hazard by falling or rolling into excavations:
    (a) Location - Opposite 271 Main St., Wilmington, MA:
On or about 11/17/99, an employee was exposed to serious injuries while working within an excavation 7 feet deep with the spoils stored at the edge.

| Date By Which Violation Must be Abated: | Corrected During Inspection |
|---|---|
| Proposed Penalty: | $    4500.00 |

## Citation 1 Item 4   Type of Violation:   **Serious**

29 CFR 1926.651(k)(1): Daily inspections of excavations, the adjacent areas, and protective systems were not made by a competent person for evidence of a situation that could have resulted in possible cave-ins, indications of failure of protective systems, hazardous atmospheres, or other hazardous conditions:
    (a) Location - Jobsite, 271 Main St., Wilmington, MA:
On or about 11/17/99, an employee was exposed to a trench cave-in hazard resulting from a lack of frequent and regular inspections by a competent person.

| Date By Which Violation Must be Abated: | Corrected During Inspection |
|---|---|
| Proposed Penalty: | $    4500.00 |

---

See pages 1 through 4 of this Citation and Notification of Penalty for information on employer and employee rights and responsibilities.

EXHIBIT B

**U.S. Department of Labor**
Occupational Safety and Health Administration

**Inspection Number:** 113544654
**Inspection Dates:** 11/17/1999 - 11/17/1999
**Issuance Date:** 01/19/2000



~~**Citation and Notification of Penalty**~~

**Company Name:**   Revoli Construction Co., Inc.
**Inspection Site:**   Opposite 271 Main Street, Wilmington, MA  01887

---

<u>Citation 2 Item 1</u>   Type of Violation:   **Willful**

29 CFR 1926.652(a)(1): Each employee in an excavation was not protected from cave-ins by an adequate protective
system designed in accordance with paragraph (b) or (c) of this section:
   (a) Location - Opposite 271 Main St., Wilmington. MA:
   On or about 11/17/99, an employee was exposed to serious injuries and or death while working within an
   excavation 7 feet deep without sloping, bracing or shoring to prevent collapse of the sidewalls.

| Date By Which Violation Must be Abated: | Corrected During Inspection |
|---|---|
| Proposed Penalty: | $   63000.00 |

K. FRANK GRAVITT
Area Director

---

See pages 1 through 4 of this Citation and Notification of Penalty for information on employer and employee rights and responsibilities.

Citation and Notification of Penalty                     Page 7 of 7                     OSHA-2 (Rev. 9/93)




**U.S. Department of Labor**
Occupational Safety and Health Administration
Valley Office Park
13 Branch Street
Methuen, MA 01844
Phone: (617)565-8110  FAX: (617)565-8115

# INVOICE/
# DEBT COLLECTION NOTICE

| | |
|---|---|
| **Company Name:** | Revoli Construction Co., Inc. |
| **Inspection Site:** | Opposite 271 Main Street. Wilmington, MA 01887 |
| **Issuance Date:** | 01/19/2000 |

**Summary of Penalties for Inspection Number  113544654**

| | | | |
|---|---|---|---|
| **Citation 1, Serious** | = | $ | 18,000.00 |
| **Citation 2, Willful** | = | $ | 63,000.00 |
| **TOTAL PROPOSED PENALTIES** | = | $ | 81,000.00 |

To avoid additional charges, please remit payment promptly to this Area Office for the total amount of the uncontested penalties summarized above. Make your check or money order payable to:
"DOL-OSHA". Please indicate OSHA's Inspection Number (indicated above) on the remittance.

OSHA does not agree to any restrictions or conditions or endorsements put on any check or money order for less than full amount due, and will cash the check or money order as if these restrictions, conditions, or endorsements do not exist.

Pursuant to the Debt Collection Act of 1982 (Public Law 97-365) and regulations of the U.S. Department of Labor (29 CFR Part 20), the Occupational Safety and Health Administration is required to assess interest, delinquent charges, and administrative costs for the collection of delinquent penalty debts for violations of the Occupational Safety and Health Act.

<u>Interest</u>. Interest charges will be assessed at an annual rate determined by the Secretary of the Treasury on all penalty debt amounts not paid within one month (30 calendar days) of the date on which the debt amount becomes due and payable (penalty due date). The current interest rate is 5%. Interest will accrue from the date on which the penalty amounts (as proposed or adjusted) become a final order of the Occupational Safety and Health Review Commission (that is, 15 working days from your receipt of the Citation and Notification of Penalty), unless you file a notice of contest. Interest charges will be waived if the full amount owed is paid within 30 calendar days of the final order.

**Delinquent Charges**.  A debt is considered delinquent if it has not been paid within one month (30 calendar days) of the penalty due date or if a satisfactory payment arrangement has not been made.  If the debt remains delinquent for more than 90 calendar days, a delinquent charge of six percent (6%) per annum will be assessed accruing from the date that the debt became delinquent.

**Administrative Costs**.  Agencies of the Department of Labor are required to assess additional charges for the recovery of delinquent debts.  These additional charges are administrative costs incurred by the Agency in its attempt to collect an unpaid debt.  Administrative costs will be assessed for demand letters sent in an attempt to collect the unpaid debt.

_____
**K. FRANK GRAVITT**
**Area Director**

_____1/19/00_____
**Date**

EXHIBIT B

```
SECRETARY OF LABOR,                 :
                                    :
        Complainant,                :
                                    :
    v.                              :
                                    :
                                    :    OSHRC Docket No. 00-0315
REVOLI CONSTRUCTION CO., INC.,      :
                                    :
        Respondent.                 :
_____:
```

## *DECISION*

BEFORE: ROGERS, Chairman; and EISENBREY, Commissioner.

BY THE COMMISSION:

At issue before us is Administrative Law Judge Michael Schoenfeld's affirmance of a willful violation of the trenching standard at 29 C.F.R. § 1926.652(a)(1).[1]

For the following reasons, we affirm the violation as willful and assess a penalty of $63,000.

### I. Background

In November 1999, Revoli Construction, Inc., was engaged in excavation and piping work in Wilmington, Massachusetts, extending a sewer pipe to a Subaru dealership. While driving by the site, Occupational Safety and Health Administration Compliance Officer ("CO") John Yanovitch noticed that trenching work was taking place. According to the CO, because trench work is part of a national emphasis program that requires compliance officers to inspect all trenches they come across, he began an inspection of the jobsite.

Yanovitch observed an employee working within the unshored, unsloped trench not wearing a hard hat. After about a minute, the employee exited the trench by jumping on a pipe and pulling himself up with his arms. Yanovitch testified that the employee had difficulty getting out of the trench, as soil was slipping from under his hands. When the compliance officer arrived at the site, Joseph Kierstead, the foreman and backhoe operator, was sitting in the cab of his backhoe where he could observe the laborer in the trench. Kierstead told CO Yanovitch that the employee was in the trench to hook up pipe. The compliance officer measured the trench to be 7 ½ feet deep, 40 inches wide and over 20 feet long. There was cracking in the soil, and spoil was piled right at the edge of the trench. Subsequent testing revealed the soil to be Type C, which requires shoring or sloping under 29 C.F.R. § 1926.652 and its appendices.

h      h c g    ec      h                    h

There were only two employees at the site: the laborer in the trench and Kierstead. The compliance officer testified that Kierstead told him that he had the authority to make decisions regarding the safety of the trench and that it was company policy to shore trenches over 5 feet deep. Indeed, there was some plywood for shoring and a trench box at the site. Kierstead testified that the laborer jumped into the trench before he was able to install the shoring.

When questioned by the compliance officer, the laborer admitted that he had been in the trench once before the compliance officer arrived at the scene. The laborer also told the compliance officer that he entered the trench on orders from the foreman, but the foreman testified that the laborer jumped into the trench on his own and ignored his orders to leave the trench. The foreman testified that it was normal for the laborer to ignore his orders.

The laborer in the trench, Mohammed Alsarabi, was the nephew of the owner and president of the company, Shawqi Alsarabi. The foreman testified that he had previously complained to the owner about the nephew's attitude towards following instructions. The complaints were ignored, in his opinion, because of the employee's relation to the owner. However, according to the compliance officer, the nephew admitted that on a previous occasion, he had been reprimanded for working in an unshored trench.

The owner testified that as result of the inspection, he fired his nephew. He also suspended the foreman for a day. He testified that while his nephew was a hard worker, he did not like to live by the rules. The owner also testified about the difficulty he had disciplining employees. He stated that his "hands were tied" by the tight job market and his inability to fine employees for safety violations. The owner told the compliance officer that the company did not have an enforcement policy or disciplinary policy for employees who fail to follow company rules. Moreover, the owner told the CO that employees are not evaluated on their safety performance. The owner also told the compliance officer that he leaves it up to the person in charge of the site to make sure that the work rules are followed.

The compliance officer testified that the foreman did not seem familiar with protective system requirements for employees working in trenches and didn't know the depth of the trench. However, in the absence of the owner, the foreman was the designated "competent person" at the site. Foreman Kierstead testified that the training he received in excavation work was "through experience." He also testified that he received weekly training from supervisors and other foremen when on the job. He was told "about soil types . . . how deep you should dig, what type of shoring to use, what's safe."

Revoli has a substantial history of prior violations, including citations for willful and repeated violations of the trenching standard cited here. The first citation of record for a violation of the cited standard was issued on June 22, 1995, which formed the basis of a repeat violation of 29 C.F.R. §1926.652(a)(1) that was issued on November 18, 1996. Pursuant to a settlement agreement, the repeat violation was affirmed and a penalty of $3500 assessed. OSHA subsequently cited Revoli for a willful violation of the same standard following a March 23, 1998 trench collapse at its worksite, in which an employee was injured. Under a settlement agreement, the willful violation was affirmed and a penalty of $40,000 assessed. According to this agreement, respondent "acknowledging the inherent dangers of trench/excavation operations and cognizant of its responsibility to ensure compliance with OSHA regulations" agreed to notify the Methuen OSHA office of any excavation work in New England exceeding 5 feet in depth, for a period of two years. Finally, on August 4, 1999, three months before the alleged violation here, Revoli was again cited for a repeat violation of 29 C.F.R. §1926.652(a)(1) for an improperly shored excavation 7 feet, 6 inches deep. Following a hearing, another administrative law judge affirmed the item, and assessed the proposed penalty of $15,000.

As a result of the inspection here, Revoli was issued two citations for serious and willful violations of

the Act.[2] Before us on review is Citation 2, Item 1, which alleged a
willful violation of 29 C.F.R. § 1926.652(a)(1) and proposed a
penalty of $63,000.

The judge affirmed this citation item as willful and assessed the proposed penalty of $63,000. He found
that, given the limits of Kierstead's authority, Kierstead had done all that he could to stop the violation.
However, he also found that Revoli's president and owner had constructive knowledge of the violation
because he knew of his nephew's history of entering unsafe trenches and had done "little or nothing
effective about it." The judge rejected Revoli's claim of unpreventable employee misconduct, finding
that it failed to establish any of the elements of the defense.

Finding that the violation was willful, the judge noted that even though the owner dismissed the laborer
as a result of the incident that resulted in the instant citation, he had done "nothing reasonably calculated
to prevent further infractions after the first such incident." Moreover, the judge inferred from the record
that "if no citation had been issued as a result of the inspection, Respondent would have taken no action
even if informed by the [foreman] of this incident."

## II. Discussion

### A. Employer Knowledge

The only issue specified in the briefing notice was whether the judge erred in characterizing the
violation as willful. In its brief on review, in addition to arguing that a willful violation cannot be based
on an employer's constructive knowledge and that the violation was not willful, Revoli argues that it
could not have known of the violation because the violation was the result of unpreventable employee
misconduct. Although the Commission has jurisdiction over all the items and issues in a case that it
directs for review, 29 C.F.R. § 2200.92(a), *Hamilton Die Cast, Inc.*, 12 BNA OSHC 1797, 1799-1800,
1986-87 CCH OSHD ¶ 27,576, p. 35,822 (No. 83-308, 1986), it ordinarily decides only those issues that
are set forth in the direction for review or briefing notice, 29 C.F.R. §§ 2200.92(a) and 2200.93(a). Here,
the knowledge issue has been briefed by both parties and bears on the question of willfulness.
Accordingly, we will consider whether Revoli had knowledge of the violative condition. *See Kaspar
Wire Works*, 18 BNA OSHC 2178, 2179 n.3, 2000 CCH OSHD ¶ 32,134, p. 48,404 n.3 (No. 90-2775,
2000), *aff'd*, No. 00-1392 (D.C. Cir. November 6, 2001) (although only willful characterization of
recordkeeping items was directed for review, Commission vacated those items for which there was
insufficient evidence to support a violation).

The test for knowledge is whether an employer knew, or with the exercise of reasonable diligence could
have known, of the violative condition. *Halmar Corp.*, 18 BNA OSHC 1014, 1016, 1995-97 CCH
OSHD ¶ 31,419, p. 44,410 (No. 94-2043, 1997), *aff'd without pub. opinion*, 152 F.3d 918 (2d Cir. 1998).
The actual or constructive knowledge of an employer's foreman or supervisor can be imputed to the
employer. *Jersey Steel Erectors*, 16 BNA OSHC 1162, 1164, 1993-95 CCH OSHD ¶ 30,041, p. 41,216
(No. 90-1307, 1993), *aff'd without published opinion*, 19 F.3d 643 (3d Cir. 1994); *Tampa Shipyards,
Inc.*, 15 BNA OSHC 1533, 1538, 1991-93 CCH OSHD ¶ 29,617, p. 40,100 (No. 86-360, 1992). An
employer can have both actual and constructive knowledge of a violation. *Danis Shook*, 19 BNA OSHC
1497, 1502, 2000 CCH OSHD ¶ 32,397, p. 49,865 (No. 98-1192, 2001), *appeal docketed*, No. 01-4038
(6th Cir. Sept. 28, 2001).

This record clearly shows that in addition to having constructive knowledge of the violation, Revoli had
imputed actual knowledge through its foreman on the job. First, we agree with the judge that Revoli had
constructive knowledge. Constructive knowledge is shown if the employer could have discovered the

existence of the violative condition with the exercise of reasonable diligence. *Pride Oil Well Serv.*, 15 BNA OSHC 1809, 1814, 1991-93 CCH OSHD ¶ 29,807, p. 40,583 (No. 87-692, 1992). Whether an employer was reasonably diligent involves a consideration of several factors including the employer's obligation to have adequate work rules and training programs, to adequately supervise employees, and to take measures to prevent the occurrence of violations. *Id.*

While Revoli's president stated that it was company policy to shore trenches over five feet deep, he told the compliance officer that the company did not have an enforcement policy or disciplinary policy for employees who failed to follow company rules. The owner also testified that his "hands were tied" by the tight job market and his inability to fine employees for safety violations. Revoli's inability to enforce trenching safety is underscored by its assignment of an employee with a propensity for breaking rules, including the standard at issue here, to a supervisor whose orders he had ignored in the past, and who knew his complaints about the employee would fall on "deaf ears." These facts establish that Revoli failed to exercise reasonable diligence and is properly charged with constructive knowledge of the violation.

Moreover, we find that the record demonstrates that the foreman had actual knowledge of the violative condition. It is undisputed that Kierstead saw the nephew in the trench and that he directed him to get out. Despite the nephew's failure to comply, Kierstead took no further action to prevent him from continuing to work in the unshored trench. Rather, he returned to the cab of his backhoe and simply watched. In view of the foreman's limited efforts to obtain compliance, combined with Revoli's complete failure to establish a means of effectively enforcing its rules, we impute Kierstead's actual knowledge to Revoli. *See Tampa Shipyards*, 15 BNA OSHC at 1538, 1991-93 CCH OSHD at p. 40,100; *A.P O'Horo Co.*, 14 BNA OSHC 2004, 2007, 1991-93 CCH OSHD ¶ 29,223, p. 39,128 (No. 83-369, 1991).[3]

## B. Willfulness

A violation is willful if committed with intentional, knowing or voluntary disregard for the requirements of the Act or with plain indifference to employee safety. *L.E. Myers Co.*, 16 BNA OSHC 1037, 1046, 1993-95 CCH OSHD ¶ 30,016, p. 41,132 (No. 90-945, 1993); *Williams Enterp.*, 13 BNA OSHC 1249, 1256, 1986-87 CCH OSHD ¶ 27,893, p. 36,589 (No. 85-355, 1987); *Asbestos Textile Co.*, 12 BNA OSHC 1062, 1063, 1984-85 CCH OSHD ¶ 27,101, p. 34,948 (No. 79-3831, 1984). A willful violation is differentiated from a nonwillful violation by a heightened awareness, a conscious disregard or plain indifference to employee safety. *General Motors Corp., Electro-Motive Div.*, 14 BNA OSHC 2064, 2068, 1991-93 CCH OSHD ¶ 29,240, p. 39,168 (No. 82-630, 1991) (consolidated); *Williams*, 13 BNA OSHC at 1256-57, 1986-87 CCH OSHD at p. 36,509. Thus, a willful violation may be found where the employer knows of the legal duty to act, and knowing an employee is exposed to a hazard, nonetheless fails to correct or eliminate the hazardous exposure. Moreover, a willful violation exists where the employer's state of mind was "such that, if informed of the duty to act, it would not have cared." *Branham Sign Co.*, 18 BNA OSHC 2132, 2134, 2000 CCH OSHD ¶ 32,106, p. 48,263 (No. 98-752, 2000). A willful charge is not justified if an employer has made an objectively reasonable, good faith effort to comply with a standard or to eliminate a hazard even though the employer's efforts are not entirely effective or complete. *Keco Indus., Inc.*, 13 BNA OSHC 1161, 1169, 1986-87 CCH OSHD ¶ 27,860, p. 36,478 (No. 81-263, 1987).

The record establishes that Revoli had a heightened awareness of the requirements of the standard based on four previous citations in four years alleging violations of the same standard. The settlement of one of these citations resulted in an agreement to pay OSHA a $40,000 penalty and to notify OSHA any time Revoli opened a trench. Revoli was also aware that its employee had ignored the safety rule before and

felt free to ignore the orders of his supervisor. Despite this perilous mixture, Revoli took no effective steps to remedy the known deficiencies in its practices and thus was plainly indifferent to employee safety. *Caterpillar Inc.*, 17 BNA OSHC 1731, 1733, 1995-97 CCH OSHD ¶ 31,134, p. 43,483 (No. 93-373, 1996), *aff'd*, 122 F.3d 438 (7th Cir. 1997). Instead, it assigned an employee with a history of unsafe work practices and resistance to supervision to work under a foreman who it failed to equip with the tools necessary to control the employee. *See Georgia Electric Co. v. Marshall*, 595 F.2d 309, 320 n.27 (5th Cir. 1979); *Valdak Corp.*, 17 BNA OSHC 1135, 1993-95 CCH OSHD ¶ 30,759 (No. 93-0239, 1995), *aff'd*, 73 F.3d 1466 (8th Cir. 1996). Like the employer in *Valdak*, Revoli "exercised an abysmally low level of supervision over the employee[] who seem[s] not to have appreciated the hazards present in the workplace." *Valdak*, 17 BNA OSHC at 1137, 1993-95 CCH OSHD at p. 42,741. It was not until after Revoli received the citation now before us, its fifth in five years, that it finally took any disciplinary action against its employees; it suspended the foreman for one day and terminated the laborer. When an employer has clear warnings that unsafe practices or conditions persist, and decides to do little or nothing in response, as Revoli chose to do here, it is strong evidence of willfulness. *See Anderson Excavating and Wrecking Co.*, 17 BNA OSHC 1890, 1995-97 CCH OSHD ¶ 31,228 (No. 92-3684, 1997), *aff'd*, 131 F.3d 1254 (8th Cir. 1997); *Falcon Steel Co.*, 16 BNA OSHC 1179, 1188, 1993-95 CCH OSHD ¶ 30,059, p. 41,336 (No. 89-2883, 1993)(consolidated); *Tampa Shipyards*, 15 BNA OSHC at 1540-41, 1991-93 CCH OSHD at pp. 40,102-03. Revoli's failure to have taken action previously when the prior citations left no doubt about what should be done, establishes its plain indifference to employee safety. We, therefore, conclude that Revoli's violation was willful. [4]

### III. Penalty

The judge assessed the proposed $63,000 penalty for this willful violation. [5] Section 17(j) of the Act, 29 U.S.C. § 666(j), requires that in assessing penalties, the Commission must give "due consideration" to four criteria: the size of the employer's business, the gravity of the violation, the employer's good faith, and its prior history of violations. *Specialists of the South, Inc.*, 14 BNA OSHC 1910, 1987-1990 CCH OSHD ¶ 29,140 (No. 89-2241, 1990). We agree with the judge that the gravity of the violation is high, that Revoli should be given credit for its small size (10-20 employees), and that it deserves no credit for good faith. Revoli's long history of noncompliance, which includes both repeat and willful violations, weighs heavily against it. Revoli has already been assessed penalties of $3500, $15,000 and $40,000 in other cases. Despite this record of previous citations and relatively high penalties, Revoli did not develop or implement an adequate safety program. Considering this history, a high penalty is necessary to induce future compliance. *See Reich v. OSHRC (Jacksonville Shipyards, Inc.)*, 102 F.3d 1200, 1203 (11th Cir. 1997)(accepting that "OSHA must rely on the threat of money penalties to compel compliance by employers"). Accordingly, we find that $63,000 is an appropriate penalty.

### ORDER

Accordingly, Citation 2, Item 1 for a willful violation of 29 C.F.R. § 1926.652(a)(1) is affirmed, and a penalty of $63,000 is assessed.

/s/
Thomasina V. Rogers

Chairman

/s/

Ross Eisenbrey

Commissioner

Dated: <u>December 7, 2001</u>

---

UNITED STATES OF AMERICA

OCCUPATIONAL SAFETY AND HEALTH REVIEW COMMISSION

```
SECRETARY OF LABOR,                    :
                                       :
        Complainant,                   :
                                       :
        v.                             :
                                       :
                                       :        OSHRC Docket No. 00-0315
REVOLI CONSTRUCTION CO., INC.,         :
                                       :
        Respondent.                    :
                                       :
Appearances:

        Kevin E. Sullivan, Esquire
        Office of the Solicitor
        U.S. Department of Labor
          Boston, MA
              For Complainant

        Barrett A. Metzler, CSP
        Northeast Safety Management
        Columbia, CT
              For Respondent
```

BEFORE: MICHAEL H. SCHOENFELD

Administrative Law Judge

## DECISION AND ORDER

### *Background and Summary of Procedural History*

This case arises under the Occupational Safety and Health Act of 1970, 29 U.S.C. §§ 651-678 (1970) ("the Act"). On November 17, 1999, the Occupational Safety and Health Administration ("OSHA") visited Respondent's work site in Wilmington, Massachusetts. As a result of the inspection, OSHA

h        h c g     ec        h                        h

issued two citations to Respondent on January 19, 2000, alleging violations of construction safety standards appearing in Title 29 of the Code of Federal Regulations ("CFR"). Respondent timely contested the citations. A hearing was held in Boston, Massachusetts, at which the parties appeared and presented evidence. Both parties have filed post-hearing briefs.

## *Jurisdiction*

It is undisputed that at all relevant times Respondent has been an employer engaged in excavation and installation of underground utilities. There is no dispute that Respondent uses goods or materials which have moved in interstate commerce. I find as fact that Respondent is engaged in a business affecting interstate commerce.

Based on the above finding, I conclude that Respondent is an employer within the meaning of section 3 (5) of the Act. Accordingly, the Occupational Safety and Health Review Commission ("the Commission") has jurisdiction over the parties and the subject matter.

## *Facts*

At the hearing in this matter the Secretary's case was presented through the testimony of Mr. John Yanovich, the OSHA inspecting Compliance Officer ("CO"), Mr. Frank Gravitt, the OSHA Area Director, and Respondent's President, Mr. Shawqi Alsarbi. Respondent presented additional testimony from the CO, Respondent's President and also called Mr. Joseph Kierstead, Respondent's foreman at the inspected work site.

The CO testified that he first saw the work site while driving. Before he knew the full nature of the work being done or the identity of the contractor[6], he pulled off the road and decided to conduct an inspection inasmuch as COs in that area had been instructed, as part of a "national emphasis program," to stop and inspect any trenching work sites they had come across. (Tr. 9-10, 85-87) CO Yanovich stated that he had taken a series of photographs, which were entered into evidence (Ex. CX 1-15), and that he interviewed the backhoe operator, Mr. Kierstead. (Tr 10-11)

The CO took measurements of the unshored, unsupported trench, finding it to be 7'6" deep, 40" wide and over 20' long. (Tr. 14). The trench was in soil which had been previously backfilled and was not sloped. (Tr. 14-15). For about one minute, he observed an employee who had been working in the trench without any hard hat exit by jumping up on a pipe and thence up to ground level. (Tr. 14-15, 29; CX-5). The employee was described as having difficulty getting out of the trench due to the loose soil slipping from under his hands as he lifted himself out. (Tr. 107-108). The employee in the trench was within sight of the backhoe operator, who identified himself to the CO as the foreman for the site. (Tr. 37, 112-113) An interview with the employee revealed that he had been reprimanded in the past for working in an unshored trench. (Tr. 24) The CO also observed areas of cracking in the soil as well as spoils piles at the edge of the trench. (Tr. 17-18; CX 6-8). In addition, a piece of the roadway surfacing material, macadam, was cracked and loose and appeared ready to fall into the excavation. (Tr. 38) The laborer told the CO that the backhoe operator had instructed him to go into the trench to hook up the PVC piping which they were installing (Tr. 21-22, 110) The backhoe operator stated at first that he believed that he was a "competent person" but, according to the CO, he recanted, after Mr. Alsarabi arrived at the site, stating that Respondent's President was so designated. (Tr. 24) Mr. Alsarabi identified himself and

maintained that the was the "competent person." He told the CO that he had intended to support the trench with plywood sheeting. Although the CO could only see one such sheet at the site (Tr. 24-25), he did not ask about any others (Tr. 25) nor could he see any ladders at the site. (Id.) The CO stated that Respondent's President claimed that it was company policy to shore every excavation over 5' deep but conceded that Respondent had no disciplinary program and that no disciplinary action had been taken against employees who failed to abide by the policy. (Tr. 26, 32) Soil test results from OSHA's laboratory showing the soil to be "type C" were admitted without objection. (CX-17, Tr. 34)

On cross-examination, Respondent sought to raise questions of whether the CO delayed the start of the actual inspection after arriving at the scene and whether he observed construction equipment on the side of the road opposite the actual excavation. (Tr. 93-98) Respondent argues in its post-hearing brief that the testimony of the CO should be afforded little or no weight because of asserted inconsistencies in his testimony to the effect that the trench was open when he drove by, that he went directly to the work site after stopping and parking his car, and that he was not on an unusual route home.[7] Respondent's arguments are rejected. Based upon my observations of the witnesses on the stand, the CO's demonstrated good memory, his opportunities for observation, the overall reasonableness of his testimony and his testimony's consistency with the photographs, I accord greater credibility to his version of conflicting factual testimony.

Mr. Frank Gravitt, who was the OSHA Area Director at the time of this inspection, testified as to the basis of the classification and proposed penalty for each citation item. (Tr. 45-69). He explained that in characterizing the violation alleged in Citation 2, Item 1, as willful, he considered "a history of noncompliance" by this Respondent (Tr. 51-3; CX-18) as well as settlement agreements which arose out of earlier citations issued to Respondent for failure to shore or properly support its trenches (Tr. 54-56, CX 19-20) and evidence that Respondent agreed that it had previously violated the trenching requirements willfully. (Tr. 57; CX-22) In addition, the Secretary introduced into evidence a Decision and Order of another Administrative Law Judge finding Respondent in serious and repeated violation of the Act for failure to provide adequate protective systems for employees working in trenches . Respondent was assessed a penalty of $15,000. (CX-22). Neither party has appealed.

Mr. Alsarabi, Respondent's President, testified as to the nature of the work undertaken at the inspected site. Respondent employees between 10 and 20 people. (Tr. 74) Although he is the president of another cited company which settled similar charges, Mr. Alsarabi maintained that he could not remember a settlement agreement in that case. (Tr. 78). He did recall paying penalties as a result of a prior willful citation. (Tr. 77) He claimed that he fulfilled the requirement of the agreement that the company notify OSHA at the start of every project it undertook which would require trenching operations. (Id.) Mr. Alsarabi further testified that the employee who was in the trench had been dismissed as a result of the "repeat action." (Tr. 134). He maintained that in the absence of an ability to "fine" employees, his ability to control employees was limited, especially in light of a limited job market. (Id.). He also asserted that he did not arrive at the site until sometime after 2:00 p.m., despite the CO's testimony otherwise. (Tr. 135).

Mr. Kierstead, Respondent's Foreman and backhoe operator at the site, had no formal training regarding excavations. (Tr. 125) He testified that the CO arrived at the trench at about 2:00 p.m. based on the clock in his backhoe. (Tr. 118). He identified the laborer in the trench at that time as the nephew of Respondent's President. (Tr. 119). He asserted that he saw the laborer in the trench before he could put in the trench box or shoring and directed him to get out. (Tr. 119, 122, 129). The employee, however, did not get out of the trench. Mr. Kierstead claimed that there were both a trench box (CX-1) and shoring at the site for his use. (Id., Tr. 124) He also testified that the laborer had done this before, resulting in his complaining to Respondent's President. (Tr. 119-120, 128). The complaints were,

however, ignored. (*Id.*) After the inspection Mr. Kierstead was suspended for one day. (Tr. 121). He maintained that at least one photograph taken by the CO had actually been taken before the excavation had been dug. (Tr. 122-123; CX-1) He also estimated the width of the trench to be greater than the 40" measured by the CO. (Tr. 127-128).


***Discussion***

Citation 2 - Item 1

1926.652(a)(1) [8]


Citation 2, Item 1 alleges a willful violation of the cited standard in that "an employee was exposed to serious injuries and or death while working within an excavation 7 feet deep without sloping, bracing or shoring to prevent collapse of the sidewalls." A penalty of $63,000.00 was proposed.

In general, to prove a violation of a standard, the Secretary must demonstrate by a preponderance of the evidence (1) that the cited standard applies, (2) noncompliance with the terms of the standard, (3) employee exposure or access to the hazard created by the noncompliance, and (4) the employer knew, or with the exercise of reasonable diligence could have known, of the condition. *Astra Pharmaceutical Products, Inc.*, 9 BNA OSHC 2126, 2129 (No. 78-6247, 1981); *Dun-Par Engineered Form Co.*, 12 BNA OSHC 1949 (No. 79-2553), *rev'd & remanded on other grounds*, 843 F.2d 1135 (8th Cir. 1988), *decision on remand* 13 BNA OSHC 2147 (1989). A closer reading of the cited standard, however, shows that sub-parts (i) and (ii) of the standard create exceptions for excavations "made entirely in stable rock" or "less than 5 feet ... in depth...." While the Secretary generally has the burden of proof, that burden shifts where exceptions apply. Moreover, the Commission has held that this principle applies to the cave-in protection requirements imposed by this particular standard. *C.J. Hughes Constr.*, 17 BNA OSHC 1753, 1756 (No. 93-3177, 1996). Thus, once the Secretary shows a respondent's employees worked in an excavation, the standards in Subpart P apply and the existence of the violative condition is established unless rebutted. Where, as here, both parties have introduced much evidence as to the depth of the trench involved, resolution of that issue is based on the merits and relative weight of the evidence.

The cited standard applies in that it is undisputed that Respondent was engaged in construction. The CO's testimony, observations and measurements are found to be more reliable that the backhoe operator's eyeball estimation of trench width. Thus, I find that the requirements of the standard were violated because the clear preponderance of reliable evidence on this record is that the excavation was more than 5 feet deep and was unshored, unsloped and otherwise unprotected at the time an employee was working in it. There is no doubt as to employee exposure. Employer knowledge is, in this case, constructive rather than actual. While Mr. Alsarabi, Respondent's President, may not have known that the employee was in the trench, he knew that his nephew had done this before. Indeed, he was warned about it by the backhoe operator on a prior occasion. There is no reliable evidence in this record that the employer took steps reasonably calculated or likely to prevent recurrence of the known dangerous behavior of the employee after the first incident. In this regard, Respondent's argument in its brief that Respondent "indicates that discipline had been in effect since the May, 1999 hearing..." is somewhat ambiguous in that the prior inspection took place on May 27, 1999 and the hearing in that case was on March 2, 2000. Moreover, Respondent's claim that further discipline was difficult "due to legal

h      h c g     ec      h                                    h

restraints," is rejected as unproven and inconsequential, especially in light of Respondent's assertion that the employee was, in fact, eventually dismissed. Thus, Mr. Alsarabi's knowledge of the prior incident and his doing little or nothing effective about it is sufficient to attribute to him constructive knowledge of subsequent identical misbehavior. Respondent's most senior person at the scene, the backhoe operator, did all that he could reasonably to prevent the occurrence (complaining as to past actions and ordering the employee out of the trench as soon as he saw him in it). The backhoe operator's diligence, while admirable, is nonetheless, insufficient to insulate Respondent's President in light of the President's inaction in the first instance. Such inaction sends the message to recalcitrant employees that their behavior is tolerated or acceptable. Accordingly, I find it reasonable to attribute to Respondent constructive knowledge of the employee's exposure to the dangers of trench collapse.

Respondent's claim of unpreventable employee misconduct is rejected. The defense was fully explained by the United States Court of Appeals for the First Circuit in its decision in

*P. Gioioso & Sons, Inc. v. Secretary of Labor,* 115 F.3d 100, 110 (1st Cir. 1997). The Court stated,

The OSH Act requires that an employer do everything reasonably within its power to ensure that its personnel do not violate safety standards. But if an employer lives up to that billing and an employee nonetheless fails to use proper equipment or otherwise ignores firmly established safety measures, it seems unfair to hold the employer liable. To address this dilemma, both OSHRC and the courts have recognized the availability of the UEM defense.

The contours of the UEM defense are relatively well defined. To reach safe harbor, an employer must demonstrate that it (1) established a work rule to prevent the reckless behavior and/or unsafe condition from occurring, (2) adequately communicated the rule to its employees, (3) took steps to discover incidents of noncompliance, and (4) effectively enforced the rule whenever employees transgressed it. See *New York State Elec. & Gas Corp. v. Secretary of Labor,* 88 F.3d 98, 105 (2d Cir.1996); *General Dynamics,* 599 F.2d at 458-59; *Jensen Constr. Co.,* 7 O.S.H. Cas. (BNA) 1477, 1479 (1979). [9] The employer must shoulder the burden of proving all four elements of the UEM defense. See *Brock v. L.E. Myers Co.,* 818 F.2d 1270, 1276 (6th Cir.1987); *General Dynamics,* 599 F.2d at 459. Sustaining this burden requires more than pious platitudes: "an employer must do all it feasibly can to prevent foreseeable hazards, including dangerous conduct by its employees." *General Dynamics,* 599 F.2d at 458; accord *H.B. Zachry Co. v. OSHRC,* 638 F.2d 812, 818 (5th Cir.1981).

* * *

Even if an employer establishes work rules and communicates them to its employees, the defense of unpreventable employee misconduct cannot be sustained unless the employer also proves that it insists upon compliance with the rules and regularly enforces them. See *Centex-Rooney Constr. Co.,* 16 O.S.H. CAS. (BNA) 2127, 2130 (1994).

(Footnotes omitted.) Respondent's asserted defense fails on all four counts. I thus conclude that Respondent was in violation of the cited standard.

I also conclude that the violation was willful as alleged.

In a recent decision the Commission identified the employer's state of mind as the "focal point" for finding a violation willful. The Commission stated that there are two ways in which the Secretary can

establish willfulness. First, the employer "knows of the legal duty to act," and, knowing an employee is exposed to a hazard, nonetheless "fails to correct or eliminate the hazardous exposure." Second, the employer's state of mind was "such that, if informed of the duty to act, it would not have cared." *Branham Sign Co.,* 18 BNA OSHC 2132, 2134 (No.98-0752, 1000). Here, the employer's state of mind is revealed through his own statements. Even though Mr. Alsarabi dismissed the employee as a result of the second incident, he did nothing reasonably calculated to prevent further infractions after the first such incident. Indeed, it is a fair reading of this record to infer that if no citation had been issued as a result of this inspection, Respondent would have taken no action even if informed by the backhoe operator of this incident.

The Commission has long ago and frequently held that in determining appropriate penalties for violations "due consideration" must be given to the four criteria under § 17(j) of the Act, 29 U.S.C. 666 (j). Those factors include the size of the employer's business, gravity of the violation, good faith and prior history. The Commission also recognizes that the factors are not necessarily accorded equal weight. *Nacierma Operating Co.,* 1 BNA OSHC 1001 (No. 4, 1972). In considering an appropriate penalty here, Respondent's history with OSHA is of overriding concern. Despite prior citations, the company's lackadaisical approach to employee safety is remarkable on this record. Citing family concerns or "tight" labor markets as an excuse for safety compliance, especially in light of prior citations, adjudications and settlement agreements, places this case clearly into the class of willful noncompliance warranting severe penalties. The Secretary's proposed penalty of $63,000 is thus found to be appropriate even for such a small employer.

Citation 1, Item 1

29 CFR § 1926.100(a) [(9)]

There is virtually no dispute that the employee did not have a hard hat on at the time he was in the trench. Respondent's post-hearing assertion that a photograph of the employee in the trench with his hood in place does not prove that he did not have a hard hat on underneath is rejected. Respondent provided no contradictory testimony nor did it call the employee as a witness. Moreover, there is clear photographic evidence otherwise. Nor is there any question that the employee in the trench was exposed to the danger of excavated materials placed next to the trench falling in on top of him. The previous discussions regarding knowledge and employee misconduct are fully applicable here. Respondent thus was in violation.

The penalty proposed for this violation is, however, too high given the facts of this case. Here, one employee was seen to be exposed to the hazard for about one minute. No further exposure is shown on this record. A penalty of $500 is more appropriate.

Citation 1, Item 2

29 CFR § 1926.651(c)(2) [(10)]

The lack of any stairway, ladder, ramp or other safe means of egress from the trench is shown by the CO's testimony and photographs. Having to climb up onto a pipe running across the trench and then lifting oneself up to the surface on loose and shifting ground is surely not a "safe" means of egress as

required. Given the dimensions of the trench, the short but documented exposure of an employee and the employer's knowledge as discussed above, the violation is established. Falling back into a trench of this depth raises the possibility of serious injury and the violation is properly classified as serious. As with the previous item, the exposure of one employee for a short duration warrants a penalty of $500.

Citation 1, Item 3

29 CFR § 1926.651(j)(2) [11]

The applicability of the standard is not challenged. The evidence as discussed above demonstrates that the violative condition existed, that an employee was exposed to the danger created by the violative condition, and that Respondent knew or reasonably should have known of the violation. The item is thus affirmed.

Other than the presence of a piece of broken macadam near the edge of the trench, there is little evidence of the precise nature of the hazard to which the employee in the trench was exposed. The degree of injury from falling debris is, however, exacerbated by the lack of appropriate head protection. Being struck on the unprotected head by a piece of falling road surface poses the possibility of serious injury. The violation is thus found to be serious, and for the reasons preciously stated, the proposed penalty of $500 is found to be appropriate.

Citation 1 Item 3

29 CFR § 1926.651(k)(1) [12]

It is clear that the nature of the project, installing PVC pipe, would require an employee to enter the trench to align the pipe and cement it in place. It is also clear that this work triggered the requirement set forth in the cited standard that the trench's condition be appropriately inspected by a competent person. [13] The purpose of the cited standard is to have a reliable and knowledgeable person with the capacity to halt unsafe conditions inspect trenches before employees enter them as a human-based way to assure safety for those who must work in the excavation. Respondent maintains that the foreman was the competent person on the site when Respondent's President was not there. This argument is rejected since the evidence shows that the foreman was not empowered to promptly eliminate the violation he witnessed. Here, clearly, the employee entering the excavation did not have someone competent empowered to protect him, even from his own foolishness. Failure to give the on-site supervisor enough authority to carry out safety requirements means there is no competent person, within the meaning of the standard, present. In the absence of such a person at the site, the final defense against possible trench collapse was thus lost. The violation is established. Trench collapse presents a serious hazard, and, for the reasons discussed above, a penalty of $500 is appropriate.

*Findings of Fact*

All findings of fact necessary for a determination of all relevant issues have been made above. Fed. R. Civ. P. 52(a). All proposed findings of fact and conclusions of law inconsistent with this decision are hereby denied.

### *Conclusions of Law*

1. Respondent was, at all times pertinent hereto, an employer within the meaning of section 3(5) of the Occupational Safety and Health Act of 1970, 29 U. S. C. § § 651 - 678 (1970).

2. The Occupational Safety and Health Review Commission has jurisdiction over the parties and the subject matter.

3. Respondent was in willful violation of 29 CFR § 1926.652(a)(1) as alleged in Citation 2, Item 1. A penalty of $63,000.00 is appropriate.

4. Respondent was in violation of 29 CFR § 1926.100(a) as alleged in Citation 1, Item 1. The violation was serious within the meaning of the Act. A penalty of $500.00 is appropriate.

5. Respondent was in violation of 29 CFR § 1926.651(c)(2) as alleged in Citation 1, Item 2. The violation was serious within the meaning of the Act. A penalty of $500.00 is appropriate.

6. Respondent was in violation of 29 CFR § 1926.651(j)(2) as alleged in Citation 1, Item 3. The violation was serious within the meaning of the Act. A penalty of $500.00 is appropriate.

7. Respondent was in violation of 29 CFR § 1926.651(k)(1) as alleged in Citation 1, Item 4. The violation was serious within the meaning of the Act. A penalty of $500.00 is appropriate.

### ORDER

1. Citation 2, Item 1 is AFFIRMED. A penalty of $63,000.00 is assessed.

2. Citation 1, Item 1 is AFFIRMED. A penalty of $500.00 is assessed.

3. Citation 1, Item 2 is AFFIRMED. A penalty of $500.00 is assessed.

4. Citation 1, Item 3 is AFFIRMED. A penalty of $500.00 is assessed.

5. Citation 1, Item 4 is AFFIRMED. A penalty of $500.00 is assessed.

/S/

h          h c g     e c      h                         h

Michael H. Schoenfeld

Judge, OSHRC

Dated: 3/26/01

Washington, D.C.

1. The standard states in pertinent part:

§ 1926.652 **Requirements for protective systems.**

(a) *Protection of employees in excavations.* (1) Each employee in an excavation shall be protected from cave-ins by an adequate protective system designed in accordance with paragraph (b) or (c) of this section except when:

(i) Excavations are made entirely in stable rock; or

(ii) Excavations are less than 5 feet (1.52m) in depth and examination of the ground by a competent person provides no indication of a potential cave-in.

2. The judge affirmed both citations. Only the willful citation is before the Commission on review.

3. We also agree with the judge that Revoli failed to show that the violation was the result of unpreventable employee misconduct. To prove that a violative condition results from unpreventable employee misconduct, the employer must show that it had a work rule that effectively implemented the requirements of the cited standard and that the work rule was adequately communicated and effectively enforced. *Gary Concrete Prods.*, 15 BNA OSHC 1051, 1055, 1991-93 CCH OSHD ¶ 29,344, p. 39,452 (No. 86-1087, 1991). The defense fails here largely for the same reasons we find constructive knowledge. *See Danis Shook*, 19 BNA OSHC at 1502-03, 2000 CCH OSHD at p. 49,865. Revoli had a work rule, but it did little to implement or enforce the rule. Therefore, the defense fails.

4. Revoli challenges the judge's willfulness finding, in part, because the judge found only constructive knowledge of the violative condition. As discussed above, we find that Revoli had both actual and constructive knowledge of the violative condition, and that the employer knowledge necessary to prove a violation has been established. With respect to whether that violation is willful, we rely on Revoli's history of prior trenching citations and its subsequent failure to address trenching hazards, as well as its failure to address persistent safety enforcement problems. *Branham Sign Co.*, on which Revoli relies, is distinguishable. In *Branham*, the Commission found no evidence that anybody in the company was aware of OSHA standards requiring fall protection or that Branham had been given prior citations or other warnings. 18 BNA OSHC at 2134, 2000 OSHRC at p. 48,263. Unlike the employer in *Branham*, Revoli has a long history of violating the cited standards and clearly had a heightened awareness of its obligations under them. *Compare A.P. O'Horo, supra.* Moreover, with its long history of trenching violations, Revoli was alerted that special attention was required to prevent future violations of that standard. *Falcon Steel Co.*, 16 BNA OSHC at 1188, 1993-95 CCH OSHD at p. 41,336.

5. Revoli asserts that the OSHA penalty formula is arbitrary and capricious, and that the Commission should independently re-assess the penalty. The Commission is not bound either by the Secretary's proposed penalties or by her formula for determining penalties. Rather, the Commission exercises its statutory authority to determine the appropriate penalty based solely on the facts of each case. *Hern Iron*

*Works, Inc.,* 16 BNA OSHC 1619, 1621-23, 1993-95 CCH OSHD ¶ 30,363, pp. 41,881-83 (No. 88-1962, 1994).

6. This CO had apparently inspected Respondent's work sites on two prior occasions. (Tr. 90-91). The more recent of the two prior inspections took place about one-half mile from the site of the excavation cited herein. (Tr. 103).

7. While the Commission has recognized that respondents may raise a claim of vindictive prosecution as a defense, *National Engineering Co.,* 18 BNA OSHC 1075 (No. 94-2787, 1977), Respondent specifically disavows any intent to portray OSHA generally or the CO individually as particularly flagitious. It does not raise the defense of vindictive prosecution in this case. (Tr. 83). Respondent maintains that it merely sought to demonstrate that the CO was "not observing the efforts that this company is making to comply with O.S.H.A." (*Id.*)

8. The regulation at 29 CFR § 1926.652(a)(1) provides,

(a) Protection of employees in excavations.

(a)(1) Each employee in an excavation shall be protected from cave-ins by an adequate protective system designed in accordance with paragraph (b) or (c) of this section except when:

(a)(1)(i) Excavations are made entirely in stable rock; or

(a)(1)(ii) Excavations are less than 5 feet (1.52 m) in depth and examination of the ground by a competent person provides no indication of a potential cave-in.

(a)(2) Protective systems shall have the capacity to resist without failure all loads that are intended or could reasonably be expected to be applied or transmitted to the system.

9. The standard provides:

(a) Employees working in areas where there is a possible danger of head injury from impact, or from falling or flying objects, or from electrical shock and burns, shall be protected by protective helmets.

10. The standard requires:

(c)(2) Means of egress from trench excavations. A stairway, ladder, ramp or other safe means of egress shall be located in trench excavations that are 4 feet (1.22 m) or more in depth so as to require no more than 25 feet (7.62 m) of lateral travel for employees.

11. The standard provides:

(j)(2) Employees shall be protected from excavated or other materials or equipment that could pose a hazard by falling or rolling into excavations. Protection shall be provided by placing and keeping such materials or equipment at least 2 feet (.61 m) from the edge of excavations, or by the use of retaining devices that are sufficient to prevent materials or equipment from falling or rolling into excavations, or by a combination of both if necessary.

12. The cited standard provides:

(k)(1) Daily inspections of excavations, the adjacent areas, and protective systems shall be made by a competent person for evidence of a situation that could result in possible cave-ins, indications of failure of protective systems, hazardous atmospheres, or other hazardous conditions. An inspection shall be conducted by the competent person prior to the start of work and as needed throughout the shift. Inspections shall also be made after every rainstorm or other hazard increasing occurrence. These inspections are only required when employee exposure can be reasonably anticipated.

13. The term "competent person" is defined as

one who is capable of identifying existing and predictable hazards in the surroundings, or working conditions which are unsanitary, hazardous, or dangerous to employees, and who has authorization to take prompt corrective measures to eliminate them. 29 CFR §1926.650(b).

**U.S. Department of Labor**

<span>Occupational Safety and Health Administration</span>
Valley Office Park
13 Branch Street
Methuen, Massachusetts 01844
Tel. (617)565-8110

EXHIBIT C



Reply to the Attention of:

July 9, 2004

Shawqi Alsarabi
Revoli Construction Co., Inc.
352 Park Street, Suite 201W
North Reading, MA 01864

| | | |
|---|---|---|
| Inspection Number | : | 113544654 |
| Reporting ID | : | 0134000 |
| Due Date | : | 03/03/2004 |
| Delinquent Date | : | 04/03/2004 |

Dear Mr. Alsarabi:

A notification of payment due for penalties assessed under the Occupational Safety and Health Act was sent to your firm on January 13, 2004. Payment was due on the date shown above and our records show that full payment has not been received. Unless payment is already in the mail, the unpaid balance shall be deemed delinquent.

Pursuant to the Debt Collection Act of 1982 (Public Law 97-365) and regulations of the Department of Labor (29 CFR Part 20), effective March 8, 1985, the Occupational Safety and Health Administration is required to assess interest, as well as delinquent and administrative charges for overdue penalties. Interest on the unpaid balance which accrues at an annual rate of one percent (1%) a year from the date the payment became due has been assessed. In addition, the administrative cost of $10.00 which has been incurred for this collection letter in order to recover the amount due has also been assessed. If the total amount due, including penalty, interest and administrative costs is not paid within one month of the date this letter is received, or a request for a payment plan (not to extend beyond December, 2006) is not received, the matter will be referred to the National Office of the Occupational Safety and Health Administration in Washington, D.C. for further action. The National Office will assess additional interest and administrative charges. If the penalty is delinquent for more than three (3) months, a delinquent charge of six percent (6%) a year accruing from the date that the debt became delinquent, will also be assessed.

Further, you should be aware that, pursuant to the provisions of the Debt Collection Act, it is the policy of the Department of Labor and the Occupational Safety and Health Administration to disclose information concerning delinquent claims to commercial credit reporting agencies, to utilize the services of private debt collectors and to report information on unpaid debts to the Internal Revenue Service. To preclude exercise of the authorities discussed above and to avoid incurring additional charges, please remit the total amount due as indicated below:

| | | |
|---|---|---|
| A review of our records indicates that you have paid: | $ | 0.00 |
| The current unpaid balance of the total penalty assessed is: | | $65,000.00 |
| The current total of interest accrued is: | $ | 0.00 |
| The current total delinquent charge (6% annual rate) is: | $ | 0.00 |
| The current total charge to cover administrative costs is: | $ | 0.00 |
| <u>TOTAL AMOUNT NOW DUE</u> | | $65,000.00 |

If you have recently submitted a payment covering the total amount of the penalty due, please disregard this notice. If you are unable to submit full payment at this time, or if you have any questions, please contact me immediately.

Sincerely,

RICHARD J. FAZZIO
Area Director

2

**U.S. Department of Labor**

Occupational Safety and Health Administration
**Valley Office Park**
13 Branch Street
Methuen, Massachusetts  01844
Tel. (617)565-8110

Reply to the Attention of:

September 13, 2004

Shawqi Alsarabi
Revoli Construction Co., Inc.
352 Park Street, Suite 201W
North Reading, MA 01864

Inspection Number: 113544654
Reporting ID     : 0134000
Due Date         : 03/03/2004
Delinquent Date  : 04/03/2004

Dear Mr. Alsarabi:

A notification of payment due for penalties assessed under the Occupational Safety and Health Act was sent to your firm on July 9, 2004.  Payment was due on the date shown above and our records show that full payment has not been received.  Unless payment is already in the mail, the unpaid balance shall be deemed delinquent.

Pursuant to the Debt Collection Act of 1982 (Public Law 97-365) and regulations of the Department of Labor (29 CFR Part 20), effective March 8, 1985, the Occupational Safety and Health Administration is required to assess interest, as well as delinquent and administrative charges for overdue penalties.  Interest on the unpaid balance which accrues at an annual rate of one percent (1%) a year from the date the payment became due has been assessed.  In addition, the administrative cost of $10.00 which has been incurred for this collection letter in order to recover the amount due has also been assessed.  If the total amount due, including penalty, interest and administrative costs is not paid **by 10/15/2004**, the matter will be referred to the National Office of the Occupational Safety and Health Administration in Washington, D.C. for further action.  The National Office will assess additional interest and administrative charges.  If the penalty is delinquent for more than three (3) months, a delinquent charge of six percent (6%) a year accruing from the date that the debt became delinquent, will also be assessed.

Further, you should be aware that, pursuant to the provisions of the Debt Collection Act, it is the policy of the Department of Labor and the Occupational Safety and Health Administration to disclose information concerning delinquent claims to commercial credit reporting agencies, to utilize the services of private debt collectors and to report information on unpaid debts to the Internal Revenue Service.  To preclude exercise of the authorities discussed above and to avoid incurring additional charges, please remit the total amount due as indicated below:

A review of our records indicates that you have paid:                          $      0.00

The current unpaid balance of the total penalty assessed is:          $65,000.00

The current total of interest accrued is:                                      $      0.00

The current total delinquent charge (6% annual rate) is:              $      0.00

The current total charge to cover administrative costs is:            $    10.00

TOTAL AMOUNT NOW DUE                                              $65,010.00

If you have recently submitted a payment covering the total amount of the penalty due, please disregard this notice. If you are unable to submit full payment at this time, or if you have any questions, please contact me immediately.

Sincerely,

RICHARD J. FAZZIO
Area Director

2